WATT *v.* STATE.

(*Nashville*, December Term, 1951.)

Opinion filed February 9, 1952.

NAT TIPTON, Assistant Attorney General, for the State.

SAM FRIEDMAN, LESTER H. BRENNER and HERBERT HARPER, all of Memphis, for defendant.

Mr. Justice Prewitt delivered the opinion of the Court.

The defendant Ludie Watt was convicted of arson and her punishment fixed at eleven months and twenty-nine days in the county workhouse. The defendant is a colored woman employed at Kennedy Hospital in Memphis. She and her husband were buying a small house in Memphis. The proof showed that they had many domestic disagreements. On the night in question, a fire alarm was given and the fire department answered the call to the home of the defendant, which was found to be on fire. An assistant fire chief of many years' experience testified that when he examined the premises, he found evidence of four separate fires, one in the living room, another in the kitchen, one in a back bedroom and one in a closet off this last bedroom. There was no fire in the front bedroom in which the defendant claims to have been at the time she discovered the fire. This investigating officer also found a jug which had the odor of kerosene. He also testified that there was kerosene on a good many articles of furniture and in the closet.

The furniture, for the most part, belonged to the defendant and was insured for $2,500. About a week before this fire, defendant had removed certain articles of furniture from this house and had sent them to the home of her mother in another section of Memphis. When she was first seen at the fire, she was fully dressed, having on her shoes which were tied. One colored witness testified that when he undertook to put out the fire before the arrival of the fire department, she insisted that he wait and let the duly constituted fire fighting authorities take care of the fire.

Her contention is that she went into the house on the evening in question and lay down across the bed fully

dressed and that she was awakened by the smoke and flames and that she immediately went out and undertook to save what she could. Her explanation of the jug which contained kerosene is that it belonged to her mother and aunt and that she was in the habit of filling it with oil and taking it to them. She also testified that she moved a sewing machine which belonged to her mother and a record player which her husband was in the habit of abusing.

■ We do not think the evidence preponderates in favor of the innocence of the accused. The jury had opportunity to hear the witnesses and observe their demeanor on the witness stand.

It is also insisted that the defendant was placed in jeopardy by reason of the following state of facts:

The indictment was recommitted to the grand jury for the purpose of correcting a variance in the ownership of the property. After the trial jury was selected and the indictment read, two members thereof stated to the court openly that they were members of the grand jury which had returned the recommitted indictment although they were unaware of the facts of the case. Thereupon, the trial court discharged these jurors and entered a mistrial.

■ The act of the trial judge in treating the disqualification of the jurors was an act propter affectum and not an act propter defectum. The right of a trial judge to discharge a juror for a reason which would authorize a new trial, should the case proceed to verdict, is settled in Tennessee. See *Green* v. *State*, 147 Tenn. 299, 247 S. W. 84, 28 A. L. R. 842.

Later, in *Etter* v. *State*, 185 Tenn. 218, 205 S. W. (2d) 1, the court recognized the right of a trial judge to exercise sound discretion in the matter. Had the trial

judge declined to discharge these jurors and the case had proceeded to verdict, there could be no question but that the defendant would have been entitled to a new trial if convicted by reason of the fact that these two jurors were members of the grand jury which returned the indictment against her. Here the trial judge was not required to go through the formality of a trial to no end.

■■■ Where it is discovered that a member of the jury was a member of the grand jury returning the indictment, the trial judge may lawfully enter a mistrial without the party being in jeopardy. *Thompson* v. *U. S.*, 155 U. S. 271, 15 S. Ct. 73, 39 L. Ed. 146; *Martin* v. *State*, 161 Ark. 423, 256 S. W. 367; *People* v. *Biggie,* 297 Mich. 58, 297 N. W. 70; *State* v. *Hansford,* 76 Kan. 678, 92 P. 551; See also *Hedger* v. *State,* 144 Wis. 279, 128 N. W. 80, 89.

It results that the assignments of error are overruled and the judgment of the lower court is affirmed.