STATE OF TENNESSEE *v.* THEODORE R. MALOUF.

(*Nashville,* December Term, 1955.)

Opinion filed February 3, 1956.

Knox Bigham, Assistant Attorney General, for plaintiff in error.

W. P. Flatt, Jr., and E. A. Langford, both of Cookeville, for defendant in error.

Mr. Justice Burnett delivered the opinion of the Court.

This is an appeal by the State from a judgment sustaining a plea of former jeopardy.

It appears from the record that the defendant in error had been indicted in the Criminal Court of Putnam County for the offense of obtaining money from the Thompson Manufacturing Company by false pretenses. It was alleged in the indictment that Malouf had entered into a verbal contract with the Thompson Company whereby he agreed to supervise certain construction for them. By the terms of the contract Malouf was to keep the time of all employees on the job and make up payroll sheets from time to time showing the amount of the wages due each employee. Malouf was supposed to submit these payroll sheets to the Thompson Company and receive money covering these wages which was to be paid by him then to the employees. Malouf failed to file these payroll sheets required by this verbal contract but he did falsely represent to this corporation, according to them, that the payrolls amounted to, over a period of time, some $2,500 in excess of what they actually amounted to and he was thus paid this amount of money.

On September 23, 1954, he was put to trial on the indictment alleging the facts above set forth and on his plea of not guilty. The State introduced the testimony of one Henry Thompson the prosecutor and Thompson's wife. After the State had closed in chief Malouf testified, and offered other witnesses on his behalf. At the end of the day the Court recessed until the following day without completing the proof. When the Court convened on the following day September 24, 1954, counsel for the State announced that Mrs. Thompson had become sud-

denly ill, due to pregnancy, the preceding afternoon, and that it had been necessary for her to be hospitalized. He supported these allegations with certificates of physicians. Counsel agreed that she certainly could not testify under the conditions there set forth. It was announced that certain things that Malouf had testified to had to be rebutted by the State and that the only person who could rebut them was Mrs. Thompson, the person who had become seriously ill the evening before, and that it was necessary then to ask for a mistrial because of her illness. The trial judge in considering this made the comment and statement that the case might be continued over a day or two for her to testify but there was no assurance that she could be back in that time, then after argument and with great misgivings on the part of counsel for the State, as well as that for Malouf, and under exceptions by counsel for Malouf the trial judge declared a mistrial.

The case then again came on to trial on May 24, 1955, at which time Malouf interposed his plea of former jeopardy. This plea recited the facts surrounding the mistrial as above indicated. The State moved to strike the plea because it was not good in law and was legally insufficient on its face to support the plea of former jeopardy. The Court overruled the motion and the State, after having excepted to the action of the Court, joined issue on the material allegations of the plea. The State then introduced proof which substantiated the statements contained in the minute entry declaring a mistrial. It was shown in addition that Henry Thompson, the prosecutor in the case, was the President of Thompson Manufacturing Company, and that Mrs. Thompson was the Secretary of the corporation and acted as its office manager. Mrs. Thompson had kept charge of the records that

were involved in the lawsuit and was much more familiar with them than her husband. Mrs. Thompson testified that after the beginning of her illness she was taken from the Cookeville Hospital to Nashville and that she then returned to her home and was bedfast altogether approximately two weeks. She further testified that she heard the defendant's testimony and that she was the only person who was in a position to contradict or direct the staff in contradicting said testimony. She had no way of knowing that the defendant would testify as he did when she testified and therefore was unable on account of her illness to present the rebutting testimony in chief. The defendant offered no testimony at this hearing on this plea.

After the hearing the Court sustained the plea and dismissed the indictment. The State duly excepted and has seasonably perfected an appeal to this Court. Able briefs have been filed on both sides and we now have the matter for determination.

██ Article I, Section X, of our Constitution contains a double jeopardy provision. The Federal Constitution, Amend. 5, contains a similar provision as do the constitutions of most States with exception of Connecticut, Maryland, Massachusetts, North Carolina and Vermont, and even in these States the right involved is enforced as a common law right. All of our earliest cases in Tennessee, as well as every other jurisdiction, that we know anything about, adopted the rule that when the accused is placed upon trial in a court of competent jurisdiction upon a sufficient indictment or information, before a jury legally impaneled and sworn, the discharge of the jury without the consent of the accused is equivalent to an acquittal of that charge. Such a rule has met with many exceptions by the courts. In making these various excep-

tions the courts have generally held to the idea, in the double jeopardy provisions of our Constitutions, a prohibition against dismissal of a jury without the defendant's consent as implicit. Of course if this be so in the Constitution the Courts have no right to make exceptions to it. The answer to this statement though is that this is not an implicit provision of our Constitution but is really only a rule adopted by the courts. This is best stated in *United States* v. *Bigelow,* 14 D. C. 393, 3 Mackey 393, where that Court said:

"And it seems to be clear that this rule has not effectively assumed at any time to be a rule of the common law in the sense which is necessarily insisted on when it is said to be an implied term of our constitutional rule. Its very fluctuations lead to the conclusion that, as formulated at different times, it only purported to be an effort of the judges to lay down a guide for judicial discretion; that it was nothing more than a rule of practice, subject to judicial control, and in its nature liable to change in order to meet exigencies as they should arise. We think, therefore, that the first part of defendant's proposition, as we have formulated it, namely, that when the Fifth Amendment was adopted there was a definitive rule of the common law which determined when a jury might properly be discharged, is not maintainable. Of course it follows that, if there was no such definitive rule, but only a judicial practice, necessarily and actually fluctuating, it is not admissible to assume that this fluctuating rule of practice was, in contemplation of the Constitution, a fixed and positive rule. And as the proposition that an improper discharge of the jury is, in the sense of the Constitution, a trial and acquittal, and

for that reason a bar to further jeopardy, depends absolutely upon the existence of a fixed rule for determining when a discharge is improper, that proposition also must fall."

Carrying out this thought, that this rule is not a constitutional prohibition but one of practice adopted by the Court to meet the exigencies of the times, we in *Etter* v. *State,* 185 Tenn. 218, 205 S. W. (2d) 1, have set forth a number of our cases and there certain conditions and illustrations of where the rule has been modified or fluctuated, so to speak. Since the opinion in this case this Court has likewise had the opinion of *Davis* v. *State,* 199 Tenn. 51, 282 S. W. (2d) 357. There are other cases in this State likewise illustrating this point. In the Etter case we said [185 Tenn. 218, 205 S. W. (2d) 3]:

"Certain conditions, if arising in the trial of a case, have come to be well recognized as constituting the occasion which will warrant the discharge of a jury, and, if they appear of record, will bar a plea of former jeopardy. These conditions are set forth in Wharton's Criminal Law, Vol. I, page 549, as: '(1) Consent of the prisoner; (2) illness of (a) one of the jurors, (b) the prisoner, or (c) the court; (3) absence of a juryman; (4) impossibility of the jurors agreeing on a verdict; (5) some untoward accident that renders a verdict impossible; and (6) extreme and overwhelming physical or legal necessity.' "

Thus it is very forcibly argued on behalf of the State that the facts of the instant case bring it within Number 6, above, that is, " 'extreme and overwhelming physical or legal necessity.' " The obvious argument in support of this is that Mrs. Thompson, the chief witness for the State, was the only one who could prove certain facts, and that due to her illness which was unforeseeable by

them without any possible negligence on the part of the State that it was necessary that a mistrial be had because the State could not get the proof of this witness before the jury. It is said that clearly, under the facts of this case, the trial judge properly granted a mistrial. Certainly the failure to grant a mistrial would have resulted in a miscarriage of justice because the State would not have had an opportunity to present this material evidence which it wanted and was kept from doing due to no fault of the State.

██ There are literally legions of cases on this question of double jeopardy. We can find any kind of case that we want involving almost any kind of a state of facts. After examining many of these cases we think that the following statement from 22 C. J. S., Criminal Law, Sec. 258, p. 394, is certainly true. That statement is:

"The American cases hold generally that there must be a manifest necessity for the discharge of the jury and leave the courts to determine in their discretion whether under all the circumstances of each case such necessity exists. When such necessity exists, a plea of former jeopardy will not prevail on a subsequent trial."

We, after giving the matter very careful thought and much study, are satisfied that under the circumstances of this case the trial judge properly exercised his discretion in granting a mistrial and that by doing so the defendant was not put in double jeopardy.

██ In the Etter case, we said:

"How can the accused say he has been injured, that any injustice has been done? We frankly cannot see how."

He has had many months to deliberate the matter and can go back and meet the question without being injured

by having to do so. He certainly is in no worse position than if he had lost the case and on appeal it had been reversed and remanded for a new trial. It is now universally held that a dismissal of a jury without his consent will not acquit the defendant when the jury has been unable to agree or if it is done on account of the illness or death of the trial judge, the defendant, or a juror, and many cases on account of the serious illness of a close relative of the judge or juror. The cases on all of these questions are entirely too numerous to here review. A jury should be discharged without this kind of a plea being good when it is impossible to proceed without manifest injustice to the public or the defendant himself.

The principle that we are here applying has been very recently applied by the Supreme Court of the United States in *Brock* v. *State of North Carolina,* 344 U. S. 424, 73 S. Ct. 349, 97 L. Ed. 456.

■ It is argued on behalf of the defendant in error that the State has no right of appeal because of Code Section 11805, Williams' Annotated Code. This section briefly provides that:

"The state has no right of appeal or other remedy for the correction of errors, upon a *judgment of acquittal* in a criminal case of any grade." (Emphasis ours.)

This section was merely an enactment of the judicial decisions previously made to prevent an appeal when the State had lost a criminal prosecution that had been finally determined on "a judgment of acquittal". The same Legislature that enacted this Code Section also enacted the following which is Code Section 11806 and was enacted by the Legislature of 1811, Chapter 72. This Code Section is:

"Either party to a criminal proceeding may, with

". the exception stated in the last section, at the term
in which final judgment is rendered, pray an appeal
in the nature of a writ of error to the supreme court."
Reading the two sections together obviously it appears
that the only place in which the State is forbidden to
appeal is when the defendant has obtained a "judgment
of acquittal". There have been many, many cases appealed by the State on questions of law where there has
been no judgment of acquittal but by determinations of
questions of law. In cases where motions to quash, pleas
in abatement, etc., have been sustained, then the State
has appealed, these things have been considered by this
Court and either the trial court reversed or affirmed on
appeal. The Supreme Court of Washington in 1945, had
before it a statute of that State to the effect that, "Any
order which in effect abates or determines the action, or
discontinues the same, otherwise than by an acquittal
of the defendant by a jury," Rem. Rev. Stat. Sec. 2183-1,
might be appealed by the State. In passing on the right
of the State to appeal a case wherein double jeopardy
was plead, that Court has written an excellent and able
opinion reviewing double jeopardy from the beginning
of time up until the time of the opinion. The case to which
we refer is *State* v. *Brunn,* 22 Wash. (2d) 120, 154 P. (2d)
826, 157 A. L. R. 1049. For an excellent academic and
legal discussion of the question of double jeopardy we
refer those interested to this decision.

For the reasons above expressed we are satisfied that
the trial judge committed error in sustaining the plea
of double jeopardy and that he should have put the defendant to trial after having declared a mistrial for the
reasons herein stated in the first instance. The result
is that the case will be reversed and remanded to the
Criminal Court of Putnam County where it will be tried

on its merits. The costs of appeal are adjudged against the defendant in error. The costs of the trial below will await the outcome there.