Grover Jones, Plaintiff in Error,

*v.*

State of Tennessee, Defendant in Error.

403 S.W.2d 750.

(*Nashville,* December Term, 1965.)

Opinion filed May 5, 1966.

Petition for Rehearing Denied June 8, 1966.

WILLIAM S. MERCURI and JAMES G. NEDEFF, Indianapolis, Ind., KARL E. MONROE and WILLIS E. SPEAR, Celina, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, and THOMAS E. FOX, Assistant Attorney General, for defendant in error.

MR. JUSTICE WHITE delivered the opinion of the Court.

The plaintiff in error, Grover Jones, was convicted of involuntary manslaughter resulting from his operation of an automobile and was sentenced to serve not less than one year nor more than one year and one day in the State Penitentiary. His motion for a new trial being overruled, he has appealed to this Court and insists here that he is entitled to have the conviction vacated and set aside because Article 1, Section 10 of the Constitution of the State provides: "That no person shall, for the same offense, be twice put in jeopardy of life or limb."

The facts are that upon the first trial of the case the judge granted the motion of the State for a mistrial after the case had been submitted to the jury for decision. This plea of former jeopardy was entered in the second trial and relied upon by defendant, but overruled by the court.

According to the technical record before us, there being no bill of exceptions to the first trial, the District Attorney General moved the court to dismiss the jury, while it was deliberating after having received the charge from the judge, and to declare a mistrial on the ground that one of the jurors was a brother to one of the defense character witnesses, and another juror was a brother-in-law of one of the defense character witnesses.

The defendant resisted the motion for a mistrial, contending that the alleged grounds for dismissal of the

jury were insufficient in law, no actual prejudice being shown. We are unable to determine from the record before us whether the presentation of these witnesses did, in fact, prejudice the right of the defendant to a fair trial since a bill of exceptions of the first trial, from which we would have to determine this matter, is not before us.

We have only a minute entry, dated November 12, 1964, which sets forth the fact that the District Attorney General did make a motion for a mistrial upon the ground that two character witnesses were related to two of the jurors, one being a sister of a juror, and another being a brother-in-law of another juror. From reading the affidavit of the District Attorney General, contained in the motion for a mistrial, we find that the witness, Mrs. Ellen Long, the sister of Juror Jackson, testified that "she knew the general reputation of the defendant, Grover Jones, and that he did not have the reputation as a drinking man."

The witness, Lester Brown, a brother-in-law of the Juror Eula Copass, testified as a character witness that "he knew the general reputation of the defendant Grover Jones and that he did not have the reputation of a drinking man," a material fact in the trial of the case, according to the District Attorney General. The Attorney General, in his affidavit, states that the relationship of these two parties to the jurors was not known to him until after the case had been submitted to the jury for decision, but that these facts and circumstances created a condition from which the general public would suspect that the jury had been or might be influenced to reach a verdict on the grounds of bias and prejudice.

The District Attorney General contends that whether or not he was a drinking man was a material fact in the trial of the case, because it was charged in the indictment that while Grover Jones was

* * * operating an automobile upon a public road in said county, while he, the said Grover Jones was under the influence of some intoxicant and while he, the said Grover Jones, was operating said vehicle thus unlawfully, did drive said vehicle into and against the body of one Newt Lee, * * *

resulting in the death of Lee. Therefore. it can be seen that the question of the reputation of Jones for drinking was a material fact to be considered by the jury in determining the guilt or innocence of Jones on trial for manslaughter.

The court disposed of this motion after argument of counsel by declaring a mistrial and discharging the jury from further consideration of the case, the minutes saying:

The court being of the opinion that it was his duty to steadfastly guard with caution the rights of both parties to the lawsuit, and that it is the duty of the court to guarantee a fair and impartial trial, * * *

and that while it was

* * * highly speculative as to what influence the testimony of Mrs. Long would have on the decision of her brother, Robert Jackson, the Court was of the opinion that in order to guarantee a fair and impartial trial, prejudice and caution dictated that a mistrial be ordered and the jury discharged.

What argument was presented to the trial judge in support of the motion and against the motion, or what evidence was introduced in support of or against the motion, is unknown to us because the matter is before us without a bill of exceptions.

There is a general presumption in the law that the trial judge does his duty and exercises proper discretion in presiding over his court.

In 22 C.J.S. Criminal Law sec. 258, it is said:

So, the American cases hold generally that there must be a manifest, imperious, urgent, real, or absolute necessity for the discharge of the jury, without their having rendered a verdict, and leave the courts to determine in their discretion whether under all the circumstances of each case such necessity exists; when it does, a plea of former jeopardy will not prevail on a subsequent trial, even though accused does not consent to the discharge of the jury.

The section further provides that there is no fixed rule laid down to control this discretion, and unless it has been grossly abused, a plea of former jeopardy cannot be sustained; but, of course, the court cannot act arbitrarily or capriciously. No abstract formula should be mechanically applied and all circumstances should be taken into account.

The court may discharge the jury without working an acquittal of the accused in any case where the ends of justice, under the circumstances, would otherwise be defeated, or where the circumstances show that a fair and unbiased trial could not be had, or where any unforeseen emergency, contingency, or happening after the em-

paneling of the jury prevents the trial from going forward according to orderly and established legal procedure.

In 21 Am.Jur.2d, Criminal Law, sec. 194, it is said:

The modern rule, however, permits the court to discharge a jury without working an acquittal of the defendant in any case where the ends of justice would otherwise be defeated. This calls for the exercise of sound discretion on the part of the court, and the power to discharge is to be exercised only where there is a cogent reason or a manifest necessity. It cannot be arbitrarily exercised.

As we have said before, there is no record of what actually transpired in the first case, and particularly in matters connected with the declaring of the mistrial, and for this reason it would not be possible for us to say that the trial judge abused his discretion. On the other hand, we would have to indulge in the presumption that he did his duty in protecting the right of the State to a fair trial.

Tennessee authority on this question seems to begin with the case of *Mahala v. State,* 18 Tenn. (10 Yerger) 532 (1837), wherein it was held not sufficient reason for the judge to discharge a jury which could not agree on a verdict, having received the charge one afternoon and being discharged at 9:00 o'clock the following morning, where the court was still in session. The Court, in that case, reviewed the authority beginning with Lord Coke in the Seventeenth Century. Coke laid it down "as a general rule that a jury sworn and charged by the court in cases affecting life or member cannot be discharged by the court, or any other, but that they ought to give

their verdict.'' Later English cases, of course, excepted to this doctrine where manifest necessity decreed that a jury should be discharged and kept from rendering a verdict. The opinion in the *Mahala* case sets out three classifications of necessity:

> First, where the court is compelled by law to be adjourned before the jury can agree on a verdict; second, where the prisoner by his own misconduct, places it out of the power of the jury to investigate his case correctly, thereby obtaining an unfair advantage of the state or if himself, by the visitation of Providence, prevent it from being able to attend to his trial; and, third, where there is no possibility for the jury to agree upon and return a verdict.

It was held that the discharge in this case was not of the type of necessity stated in the third category, the inability to agree contemplated in category three means a physical impossibility. As will be seen later, the impossibility of agreement, regardless of how long the jury deliberates, has been held to constitute a necessity for discharging the jury and clearing away the jeopardy that has already attached.

Where jurors were discharged sometime during the trial, or at least sometime after the jury was empaneled and sworn to try the issues, and the discharge was *propter defectum* (that is as distinguished from grounds such as prejudice of a juror), all this over defendant's objection, it has been held that defendant was twice put in jeopardy when a new panel or new jurors were sworn. *Ward v. State,* 20 Tenn. (1 Humph.) 253 (1839); *Tomasson v. State,* 112 Tenn. 596, 79 S.W.2d (1903).

■ However, it was held in *Green v. State,* 147 Tenn. 299, 247 S.W. 84, 28 A.L.R. 842 (1922), that "manifest necessity" was found in discharging a juror and substituting a new one where during the trial one juror stated that he could not vote to punish defendant because of religious scruples. Thus, the rule can be stated in Tennessee that once a jury has been sworn to try the issues, a juror, or jurors, or the whole panel, cannot be discharged and a mistrial declared without discharging the defendant, except in cases of manifest necessity; and that manifest necessity is not to be limited to certain categories, but exists where prejudice to either the defendant or the State may be found. *Holt v. State,* 160 Tenn. 366, 24 S.W.2d 886 (1930).

We must now look to see what cases of manifest necessity have arisen in Tennessee calling for the proper discharge of a juror or the entire panel, or calling for a mistrial, in which a retrial was not held to be double jeopardy. In *Usary v. State,* 172 Tenn. 305, 112 S.W.2d 7, 114 A.L.R. 1401 (1937), it was held that where the jury was unable to agree on one count of a multi-count indictment, and a mistrial was declared in that count, it is not double jeopardy to try the defendant again on that count. This case, of course, takes away some of the authority of the exact holding in the *Mahala* case, supra, but the general principles of *Mahala* are still intact. In *Watt v. State,* 193 Tenn. 257, 246 S.W.2d 4 (1952), it was discovered that a member of the jury was a member of the Grand Jury which returned the indictment; it was held there that the trial judge could lawfully enter a mistrial without the party defendant being in jeopardy.

In *Etter v. State,* 185 Tenn. 218, 205 S.W.2d 1 (1947), one of the jurors became separated from the others during

the trial. The trial judge declared a mistrial after conferring with counsel. He had asked defense to waive the matter, but defense said they would not "waive any possible defense" of their client. It was held that there was no double jeopardy on retrial. Here the Court set out:

Certain conditions, if arising in the trial of a case, have come to be well recognized as constituting the occasion which will warrant the discharge of a jury, and, if they appear of record, will bar a plea of former jeopardy. These conditions are set forth in Wharton's Criminal Law, Vol. I, page 549, as: "(1) Consent of the prisoner; (2) illness of (a) one of the jurors, (b) the prisoner, or (c) the court; (3) absence of a juryman; (4) impossibility of the jurors agreeing on a verdict; (5) some untoward accident that renders a verdict impossible; and (6) extreme and overwhelming physical or legal necessity." 185 Tenn. at 223-224, 205 S.W.2d at 3.

In holding that the trial judge must exercise sound discretion in the matter, the Court makes this statement:

In our effort to see that the rights of persons accused of crime are protected, we should not overlook the fact that the people also have interests that should be safeguarded. Both the accused and the people have a right to have the case of the accused tried by an impartial jury. If during the trial the judge learns that one of the jurors has been separated from the other jurors and this fact is also known to the accused, as well as the prosecution, can there be any doubt that it is not only his right but his duty to say there either has been a mistrial or that another juror should be empaneled? 185 Tenn. at 224, 205 S.W.2d at 3.

Somewhat closer to the fact situation in the instant case is the case of *Helton v. State,* 195 Tenn. 36, 255 S.W.2d 694 (1953). There a juror was accepted on voir dire even though he knew the defendant, but stated that he never had any dealings with him. Later the juror's divorced wife gave an affidavit—which did not appear in the record, but which was recited in the minutes of the court—to the effect that there were contacts between the juror and the defendant. The judge discharged this juror and declared a mistrial. It was held to be a legal necessity to discharge the jury and it was not double jeopardy to try the defendant again:

Evidently the trial judge came to the conclusion that Brooks would not be a fair and impartial juror for the state and that he had misrepresented the personal relationship with the defendant. This juror or his voir dire examination simply stated that he merely knew the defendant, while the testimony of Mrs. Brooks shows that he had many contacts with him and that they were very friendly.

We think the trial judge has ample authority upon the question of bias to discharge a juror. 195 Tenn. at 45-46, 255 S.W.2d at 698.

The most recent case in Tennessee on the question of former jeopardy, after the first trial ended in a mistrial, is *State v. Malouf,* 199 Tenn. 496, 287 S.W.2d 79 (1956). There a mistrial was declared, over defendant's objection, where the State claimed it could not produce, because of illness, an essential rebuttal witness. On the second trial a plea of former jeopardy was entered which recited the facts surrounding the mistrial. The State joined issue on allegations of the plea and "then introduced proof which substantiated the statements

contained in the minute entry declaring a mistrial." It was held that the trial judge properly exercised his discretion in granting a mistrial and that by doing so the defendant was not twice put in jeopardy.

It is said that clearly, under the facts of this case, the trial judge properly granted a mistrial. Certainly the failure to grant a mistrial would have resulted in a miscarriage of justice because the State would not have had an opportunity to present this material evidence which it wanted and was kept from doing due to no fault of the State. * * * It is now universally held that a dismissal of a jury without his consent will not acquit the defendant when the jury has been unable to agree or if it is done on account of the illness or death of the trial judge, the defendant, or a juror, and many cases on account of the serious illness of a close relative of the judge or juror. The cases on all of these questions are entirely too numerous to here review. A jury should be discharged without this kind of a plea being good when it is impossible to proceed without manifest injustice to the public or the defendant himself. 199 Tenn. at 503-504, 287 S.W.2d at 82.

■ One of the best statements in support of the rule that the State seeks to invoke in this Court comes from the case of *Beaty v. Hood*, 43 Tenn.App. 228, 232, 306 S.W.2d 671, 672 (1957). This case, of course, is not a criminal case but we think the rule applies equally in both civil and criminal situations:

Thus where it is apparent on the face of the record that the bill of exceptions omits any evidence on which the trial Judge may have acted, the presumption of the correctness of his findings of fact becomes almost

conclusive and, under such circumstances, this Court will not reverse on the facts except for manifest error.

While this rule does not apply in chancery practice, there is obviously no need to cite the legion of cases recognizing this rule in appeals from the law courts, both civil and criminal.

■■ The trial judge involved in this case has had a long and distinguished record on the Bench and we are not prepared to say that he abused his discretion upon the record appearing before us. On the contrary, it is our opinion that he exercised a wise and sound discretion. We, therefore, find the assignments of error to be without merit and the judgment is affirmed.

Affirmed.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.

## Opinion on Petition to Rehear

MR. JUSTICE WHITE.

Plaintiff in error urges us to grant his petition to rehear, stating that this Court overlooked certain material propositions of law. The following discussion will show that we think the petition to be without merit, and it must therefore be denied.

■ Assuming that the grounds for granting a mistrial are analogous to the grounds for granting a new trial after a verdict has been rendered, petitioner offers this propositon: A juror who could be challenged for cause, his disqualification being *propter defectum* as opposed to *propter affectum,* could not be disqualified and a new trial granted after verdict had been rendered. *Walker v.*

*State,* 118 Tenn. 375, 99 S.W. 366, (1906). The contrary is of course, true : if the juror's disqualification was such that his sitting on the jury, hearing and deciding the case, was clearly prejudicial and unfair to defendant, then the error was *propter affectum* and a new trial should be granted. *Durham v. State,* 182 Tenn. 577, 188 S.W.2d 555, 160 A.L.R. 746 (1945).

It has been held that where the simple fact appeared that the brother-in-law of the sheriff who testified in the case sat on the jury, there could be no objection *propter affectum* as grounds for a new trial after a verdict. *Farmer v. State,* 201 Tenn. 107, 296 S.W.2d 879 (1956). While these cases could perhaps influence the trial judge in whether or not he should grant a new trial, or grant a mistrial before the verdict is reached, without a preservation of the evidence upon which he acted, we must presume that he acted properly and in accordance with the law.

It is further claimed that the State is estopped to complain of prejudice that would warrant a mistrial because it had an opportunity to question and disqualify any jurors that may have been kin to the witnesses, Mrs. Ellen Long and Lester Brown. True, there is a waiver of challenges *propter defectum* if they are not made upon voir dire and the disqualifications are known or could have been ascertained with reasonable diligence at the time. *Lindsey v. State,* 189 Tenn. 355, 255 S.W.2d 533, 15 A.L.R.2d 527 (1949) ; *Monday v. State,* 160 Tenn. 258, 23 S.W.2d 656 (1930).

However, the state prosecutor swears in his affidavit in support of the motion for a mistrial that disqualification information was not discovered by the

State until later on in the trial. Apparently the evidence sustained this statement or at least the trial judge did not feel that any prejudice appeared until the juror-related witnesses testified as they did. At any rate, without a bill of exceptions, we must presume the judge exercised his discretion properly. In this instance, we might add that it should not be necessary to examine the mind of each juror to determine that prejudice was a fact and not just a reasonable inference.

Finally, the petitioner asserts that we overlooked his argument that the Court below erred in sustaining without a hearing the motion to strike his plea of former jeopardy. Petitioner claims that by the Court doing this, he was unable to prove the allegation in his plea that there was no evidence before the Court in the first trial to warrant a mistrial; therefore, since a motion to strike admits the allegations in the plea, these allegations must be taken as true, and this Court must thereby agree that there was no evidence to support the declaration of a mistrial. *Gang v. State,* 191 Tenn. 468, 234 S.W.2d 997 (1950). Thus he argues that since this allegation is to be taken as true, it is sufficient in law to sustain the plea of former jeopardy.

██ This argument is without merit under the circumstances of this case. If it can be said that the allegation that there was no evidence to support the declaration of a mistrial is a fact allegation and not a conclusion of law—a conclusion of law is not admitted by a motion to strike—then it may very well support his plea. However, no bill of exceptions is available to give evidence of this allegation, and it would be unreasonable to force the trial judge, who is the same in both trials, to

testify to himself about what evidence he heard supporting his decision to declare a mistrial.

Actually, the minutes of the Court indicate that petitioner's plea of former jeopardy was considered again on the hearing on his motion for a new trial after the conviction:

"At this hearing defendant re-introduced his plea of former jeopardy with attached affidavits. The Court remarked that he had read and carefully considered the plea of former jeopardy with affidavits thereto attached. Argument was heard by the Court by counsel for the State and for the defendant. This was all the evidence on the motion."

We think the plea was given more than adequate consideration. We must, as we have said before, assume that the evidence heard by the trial judge, at the time he granted a mistrial, supported his decision.

The petition to rehear is, therefore, denied.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.