# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
February 12, 2002 Session

## STATE OF TENNESSEE v. ALLEN LEE DOTSON, SR.

### Direct Appeal from the Circuit Court for Marion County
### No. 4897     Thomas A. Greer, Judge

---

### No. M2001-01970-CCA-R3-CD - Filed October 21, 2002

---

The defendant challenges the sufficiency of evidence, the trial court's failure to declare a mistrial, and the "knowing" jury instruction as it relates to his second degree murder conviction. We hold no reversible error occurred at trial and affirm the judgment from the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

William H. Ortwein, Chattanooga, Tennessee, for the appellant, Allen Lee Dotson, Sr.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; Michael W. Catalano, Associate Solicitor General; James Michael Taylor, District Attorney General; and Steven M. Blount, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, Allen Lee Dotson, Sr., and his son, Allen Lee Dotson, Jr., were indicted for the first degree murder of Cecil Bolton. The father and son were tried together. At the close of the proof, the trial court granted the son's motion for judgment of acquittal, thereby removing from the jury's consideration the guilt of the son. After deliberations, the jury returned a guilty verdict against the defendant for second degree murder, a lesser-included offense of first degree murder. Later the trial court sentenced the defendant, as a Range I standard offender, to the Department of Correction for twenty-two years. In this appeal, the defendant contends:

    (1) there was insufficient evidence to support the conviction for second degree murder;

    (2) the trial court erred in failing to declare a mistrial; and

    (3) the "knowing" jury instruction as it relates to the second degree murder was erroneous and lessened the State's burden of proof.

## Facts

Allen Dotson, Jr. and Mark Stevens were attempting to haul lumber and other materials on a trailer when the vehicle jackknifed on Highway 156 on South Pittsburg Mountain. Both lanes of traffic were blocked for approximately thirty minutes. The victim, Cecil Bolton, drove up to the point of blockage. Words were exchanged between the victim and Dotson, Sr., who was then attempting to render assistance to his son. A scuffle ensued between the defendant and the victim in the interior of the victim's truck, and some damage was done to the victim's vehicle as a result. The victim proceeded back down the mountain to the South Pittsburg Police Station. He made a complaint to the dispatcher on duty, who notified the Marion County Sheriff's Department. A sheriff's deputy was dispatched to the scene of the original altercation. While at the police station, the victim stated his intent was to go home, get his deer rifle, and "take care of it myself."

The victim took a different route to his residence, got his 30-30 deer rifle and ammunition, and then left after telling his wife he was going to initiate a warrant for the damage he had suffered.

Meanwhile, Dotson, Jr. and a companion had moved the trailer containing the lumber to an off-road location at the intersection of Highway 156 and Orme Mountain Road. The defendant had gone to his residence, gotten a shotgun and ammunition, and gone to this intersection. His presence in the woods on the side of the road was apparently unknown to Dotson, Jr. and his companions.

The victim arrived at the intersection and slid his vehicle to a stop. He exited with the rifle to his shoulder, pointing it in the direction of the defendant, but also toward Dotson, Jr. and his companions who were generally between the two armed men. The defendant fired the shotgun, striking the victim who turned and started to retreat. The defendant fired a second shot, and the victim dropped the rifle and continued retreating toward the edge of the road. A third, and possibly a fourth, shot were fired by the defendant, and the victim clutched his leg and fell into a ditch.

Dotson, Jr. ran to the victim, rolled him over, and began yelling and pummeling the victim's chest. The defendant came to the victim and poked him with the shotgun. Dotson, Jr. rose and, as he was walking away, said, "[D]addy, let['']s go." The defendant fired once more at close range, discharging a fatal shot to the victim's head.

## Analysis

The defendant's first issue is that the evidence was insufficient to support a conviction for murder in the second degree. When an accused challenges the sufficiency of the evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995).

The trier of fact, not this Court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence. Id. In State v. Grace, the Tennessee Supreme Court stated, "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

The defendant argued that the killing was in the heat of passion and thus, voluntary manslaughter. The trial judge gave the jury instructions ranging from first degree murder to criminally negligent homicide. The jury heard and rejected the defendant's theory of voluntary manslaughter. We will not gainsay their findings. The evidence sufficiently supports the verdict. This issue is without merit.

The defendant next contends that a mistrial should have been granted due to an outburst by the co-defendant and responsive participation from the audience. The defendant further contends that the error was aggravated by the trial judge's actions and statements following the disturbance.

During cross-examination of the defendant by the State, the co-defendant, Dotson, Jr., proclaimed, "Here let me leave the courtroom so I don't have to listen to this shit." This was answered by a spectator in the audience, "We're having to listen to it, too, Allen. We lost someone, you didn't." The defendant immediately moved for a mistrial, which was overruled.

At the conclusion of Dotson, Sr.'s testimony, the judge called for a lunch break and addressed the jurors as follows:

THE COURT: All right, it's the lunch hour. What I want y'all to do, I want the Dotsons to go in the jury room a moment while we clear the courtroom, and the jury, they'll take y'all straight on out to lunch. We're going to be reassembling here at 10 minutes after 1:00, so both Dotsons just stay here a moment. I don't think y'all need to be commingled with various and sundry people.

Defendant then renewed his motion for mistrial due to the judge's statements.

The decision of whether to grant a mistrial is within the sound discretion of the trial court. See State v. McKinney, 929 S.W.2d 404, 405 (Tenn. Crim. App. 1996). This Court will not disturb that decision absent a finding of an abuse of discretion. State v. Adkins, 786 S.W.2d 642, 644 (Tenn. 1990). "Generally a mistrial will be declared in a criminal case only when there is a 'manifest necessity' requiring such action by the trial judge." State v. Millbrooks, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991). "The purpose for declaring a mistrial is to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict." State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). In determining whether there is a "manifest necessity" for a mistrial, "'no abstract formula should be mechanically applied and all circumstances should be taken into account.'" State v. Mounce, 859 S.W.2d 319, 322 (Tenn. 1993) (quoting State v. Jones, 218 Tenn. 378, 384; 403 S.W.2d 750, 753 (1966). citation omitted).

We decline to hold that the unsolicited outbursts or the trial judge's remarks, either separately or in combination, rose to the level of prejudice resulting in a "manifest necessity" for a mistrial.

The defendant's final issue is that the trial judge erroneously charged the jury as to second degree murder and lessened the State's burden of proof. A defendant has the constitutional right to complete and accurate jury instructions on the law; the failure to do so deprives a defendant of the constitutional right to a jury trial. State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). The omission in jury instructions of an element of the offense is subject to constitutional harmless error analysis, namely, whether the State can prove harmless error beyond a reasonable doubt. State v. Walker, 29 S.W.3d 885, 893 (Tenn. Crim. App. 1999).

The pertinent jury charge given in this case is as follows:
A person acts knowingly if that person acts with an awareness either that his or her conduct is of a particular nature, or that a particular circumstance exists.

The State concedes that the charge was in error but contends it was harmless error. Our supreme court in State v. Ducker, 27 S.W.3d 889, 896 (Tenn. 2000), proclaimed second degree murder to be strictly a "result of conduct" offense. However, Ducker was not a second degree murder case. In a later murder case, reversible error was found for failure to charge second degree murder as a "result of conduct" only offense. State v. Keith T. Dupree, No. W1999-01019-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 65, at *11 (Tenn. Crim. App., Jan. 30, 2001, at Jackson), no applic. for perm. to app. filed. The trial court in Dupree omitted entirely the result of the conduct element.

The defendant places his reliance on State v. Page, 81 S.W.3d 781 (Tenn. Crim. App. 2002). Page was convicted for second degree murder after striking the victim once with a baseball bat. Page's counsel argued that the defendant was intoxicated to such an extent that he did not appreciate his conduct and did not think the blow was that severe. Counsel suggested the offense was criminally negligent homicide. The State responded by emphasizing specifically the nature of the conduct and circumstances surrounding the conduct elements in the instruction. The charge later given by the trial judge gave credence and confirmation to the State's erroneous contention that the

jury could find the defendant guilty based upon "the nature of the conduct" or "the circumstances surrounding the conduct." It is important to note that the court in Page said, "We recognize that in many, if not most, homicide trials, the mens rea jury instructions utilized in this case would be harmless error." Id. at 789.

Following the guidance set forth in Dupree and later in Page, it is clear, as the State concedes, the only element of the knowing instruction applicable to second degree murder is the "result of conduct element." The defendant's correct contention that the instruction as given was error and the State's concession do not, however, conclude our inquiry as to reversible error.

The State contends that the error was harmless. Therefore, we must examine whether the State has proven harmless error beyond a reasonable doubt.

The defendant's counsel in the instant case did make references to the defendant's state of mind and offered alternative defenses, defense of others and self-defense. Counsel argued specifically that the facts were appropriate for either voluntary manslaughter or self defense. The State, in its rebuttal argument, unlike in Page, made no reference to the nature of the defendant's conduct or the circumstances surrounding his conduct. The defendant's voluntary manslaughter defense does not deny that he intentionally killed the victim. Instead, it is an attempted justification for an intentional killing. Voluntary manslaughter is defined in Tennessee Code Annotated section 39-13-211 as "the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner."

We conclude the instant facts are distinguishable from Page, in that the defendant did not deny the intentional killing of the victim and the State focused, and its proof showed, that the defendant fired a shotgun at close range into the head of an unarmed victim who was lying on the ground. The defendant's conduct and defenses did not call into question whether the defendant's conduct was likely to produce death. The State is therefore correct, and they have proven the error was harmless beyond a reasonable doubt. Accordingly, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE