IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
November 15, 2022 Session

**STATE OF TENNESSEE v. BOBBY HANSARD**

**Appeal from the Criminal Court for Knox County
No. 115334   Steven Wayne Sword, Judge**

—————————————————

**No. E2021-01380-CCA-R3-CD**

—————————————————

Following a Knox County jury trial, Defendant, Bobby Hansard, was convicted of one count of first degree murder, three counts of attempted first degree murder, and one count of unlawful possession of a firearm.  On appeal, Defendant alleges that the trial court improperly limited defense counsel's opening statement after counsel referenced various prior bad acts of one of the victims, and that the trial court abused its discretion in denying his motion for a mistrial and his motion for a judgment of acquittal.  After a thorough review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., P.J., and JOHN W. CAMPBELL, SR., J., joined.

Danny C. Garland, II, Knoxville, Tennessee, for the appellant, Bobby Allen Hansard.

Jonathan Skrmetti, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Charme P. Allen, District Attorney General; and Joanie Stewart and Nathaniel Ogle, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

A Knox County grand jury indicted Defendant and his codefendants, Joseph Bellew, Elijah Dozard, and Sean Longmire for first degree murder and three counts of attempted first degree murder.  Defendant alone was indicted for unlawful possession of a firearm.  Defendant filed a motion to sever which the trial court granted.

The State presented the following evidence at trial. Defendant spent the night of October 30, 2018, at his friend Shane Ball's house in Sevierville. The next morning, Defendant borrowed approximately $1000 and a nine-millimeter gun from Mr. Ball. Defendant called Kyvion Ware and asked to buy "dope." Mr. Ware agreed. However, Mr. Ware never intended to sell Defendant "dope," and instead planned to rob him. The two arranged to meet at the Cambridge Apartments in Knoxville. A couple hours later, Defendant and his codefendant-friend, Dallas Bellew, drove to the apartment complex in a maroon Cadillac.

Mr. Ware's friend and deceased victim in this case, Bryson McGrotha, lived at the Cambridge Apartments. Mr. Ware, Mr. McGrotha, and another friend, Dalton Miller, spent the previous night at Mr. McGrotha's apartment. When Defendant and Mr. Bellew arrived, Mr. Ware and Mr. Miller met them in the parking lot. They began negotiating for the purchase of drugs. Mr. Ware convinced Defendant to give him roughly $1200. Mr. Ware told Defendant he could not come with him to the drug deal. Mr. Ware walked away from the three men and towards the apartment complex. He approached a random apartment door, knocked on it, "pull[ed his] pants up[,]" and took off running. Mr. Ware rounded the apartment complex, ran down a flight of stairs, and knocked on Mr. McGrotha's apartment door. Mr. McGrotha let Mr. Ware inside the apartment. As Mr. Ware and Mr. McGrotha were counting the stolen money, they saw Defendant and Mr. Bellew standing outside the window, searching for Mr. Ware. Defendant and Mr. Bellew took Mr. Miller with them and left the apartment complex.

Afterward, Defendant and Mr. Ware communicated via Facebook Messenger. Mr. Ware testified that Defendant spoke "real explicit, talking crazy, you know, [']I'm trying to get my money back,['] yada, yada, yada." Mr. Ware recalled Defendant's making threats, but he did not believe them at the time. Defendant told Mr. Ware that Mr. Miller was in the backseat of his car. Mr. Ware told Defendant, "[I]f you let my homeboy go, I'll meet you [] and I'll give you your money back." Mr. Ware did not meet at the agreed upon location, but Mr. Miller eventually returned, alone, to the Cambridge Apartments. Defendant continued calling Mr. Ware and making threats.

Sometime before noon, Mr. Ware called his friend, Audrey Matthews. She drove to the Cambridge Apartments and picked up Mr. Ware, Mr. Miller, and Mr. McGrotha. They drove to meet Michael Donte West at his mother's home to buy drugs from him and resell them. Mr. West sold heroin and methamphetamine. When they arrived, Mr. McGrotha exited the car and knocked on the front door. After a short conversation, Mr. West followed Mr. McGrotha to Ms. Matthews' car and got inside. One of the occupants in the car told Mr. West that they stole the money from Defendant. They handed Mr. West $800 and dropped him off at a trailer further down the road to purchase drugs. Mr. West told them to go to a store and then return to his mother's home. Mr. West

proceeded to call Defendant. He told Defendant that he could return some of Defendant's stolen money for a fee, and provided the location of Mr. Ware's group to Defendant. Around noon, Defendant and his codefendants drove towards Mr. West's mother's house in a maroon Cadillac. Defendant, Mr. Dozard, and Mr. Longmire were armed.

Meanwhile, Mr. Ware's group returned to Mr. West's mother's house and parked in the driveway. They listened to music in the car. Mr. McGrotha grew tired of waiting and exited the vehicle to call Mr. West. Mr. Ware sat in the front passenger seat of the car and smoked a cigarette. He "flicked [his] cigarette out of the window" and leaned back in his seat. Shortly thereafter, he heard a "flurry" of gunshots and saw the shots coming from a maroon Cadillac. Ms. Matthews testified she saw three guns pointing in the direction of her car before the shooting began. Mr. West's mother "came out[side] screaming, and that's when they stopped [shooting] and left." Mr. McGrotha was shot in the back of the head and died on the scene. Mr. Miller was shot in the leg and survived his injury.[1]

Several police officers and emergency medical technicians arrived to render aid. The officers recovered multiple bullet casings from the scene that were later found to match the firearm Defendant borrowed from Mr. Ball. Knox County Sheriff's Office Detective Steven Ballard interviewed the surviving victims and Mr. West. Based on those conversations, Detective Ballard investigated Defendant and the codefendants. Detective Ballard conducted interviews with Defendant's grandfather, Mr. Bellew, and various individuals who knew Defendant. The Sevier County police took Defendant into custody on November 4. Later that day, Detective Ballard interviewed Defendant. During the interview, Defendant admitted to emptying the "clip" of his gun at Mr. Ware's group outside Mr. West's mother's house, although he maintained that he only began shooting after the other individuals in the maroon Cadillac started shooting.

After a *Momon* discussion, Defendant elected not to testify or present any additional proof. See *Momon v. State*, 18 S.W.3d 152 (Tenn. 1999)

The jury convicted Defendant as charged. The trial court imposed a life sentence for the first degree murder conviction, to be served consecutively to a six-year sentence for the unlawful possession of a firearm conviction. The court imposed 25-year sentences for the three attempted first degree murder convictions, to be served consecutively to each other but concurrently to the life sentence. The trial court denied Defendant's motion for new trial and Defendant now appeals.

---

[1] Dalton Miller died in an unrelated incident prior to trial.

*Analysis*

Defendant argues that the trial court improperly limited his defense counsel's opening statement, that the trial court abused its discretion in denying his motion for a mistrial, and that the trial court abused its discretion in denying his motion for a judgment of acquittal.[2]  The State responds that the trial court properly limited defense counsel's opening statement and did not abuse its discretion in denying the motion for a mistrial or the motion for a judgment of acquittal.

*Opening Statement*

Defendant contends that the trial court improperly limited his opening statement when it restricted defense counsel from referencing prior bad acts of one of the victims. The State responds that the trial court properly limited defense counsel's opening statement based on the Channon Christian Act.  We agree with the State.

In a criminal trial, the prosecution and the defense are entitled to make opening statements prior to the presentation of the case that set forth "their respective contentions, views of the facts, and theories of the lawsuit."  T.C.A. § 20-9-301; *State v. Sexton*, 368 S.W.3d 371, 414-15 (Tenn. 2012).  The purpose of an opening statement is to give a general overview of "the nature of the case" and "the facts each party intends to prove." *Sexton*, 368 S.W.3d at 415.  One boundary on an opening statement is that the facts presented must be "deemed likely to be supported by admissible evidence," *id.* (citing *Stanfield v. Neblett*, 339 S.W.3d 22, 41-42 (Tenn. Ct. App. 2010)), and "[n]o reference should be made to facts or circumstances which are not admissible in evidence."  *Id.* (citing 75A Am. Jur. 2d *Trial* §§ 525, 526 (West 2012)).

Prior to trial, the State filed a motion to exclude evidence of prior bad acts of the victims and witnesses under Tennessee Code Annotated section 24-7-125 (2017), the Channon Christian Act.  The trial transcript references a pretrial hearing where the parties argued the motion.  However, the record does not contain a transcript of the pretrial hearing or a corresponding order from the trial court.

At trial, during Defendant's opening statement, counsel referenced one of the victims, Mr. Ware, being a drug dealer and "serving time" with Defendant.  The State objected based on its pretrial motion.  The trial court sustained the objection.  Later in his opening statement, defense counsel referred to Mr. Ware being a member of the "Vice Lords."  The State objected and the trial court again sustained the objection.

---

[2] We have reorganized Defendant's issues for clarity.

- 4 -

We note that Defendant appears to ignore the Channon Christian Act in his argument on appeal. Tennessee Code Annotated section 24-7-125 states that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of any individual, including a deceased victim, the defendant, a witness, or any other third party in order to show action in conformity with the character trait." T.C.A. § 24-7-125. In our supreme court's recent decision in *State v. Moon*, 644 S.W.3d 72 (Tenn. 2022), *cert. denied*, No. 22-5177, 2022 WL 4656551 (U.S. Oct. 3, 2022), the court stated that the Channon Christian Act "is essentially identical to Rule 404(b) and expands Rule 404(b) protections to all witnesses in a criminal case. *Moon*, 644 S.W.3d at 82. Tennessee Rule of Evidence 404(b) states:

> (b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:
>
> > (1) The court upon request must hold a hearing outside the jury's presence;
> >
> > (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;
> >
> > (3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and
> >
> > (4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b).

Defendant did not request a hearing on prior bad acts evidence until midway through the trial, and then only regarding three photos of the deceased victim holding firearms and money. The trial court first restricted defense counsel's opening statement when defense counsel referenced Mr. Ware being a drug dealer and "serving time" with Defendant. The court again restricted defense counsel's statement when counsel referred to Mr. Ware as a member of the "Vice Lords."

- 5 -

These statements undoubtedly implicate the Channon Christian Act. Because Defendant did not request a hearing to show a purpose for their admissibility other than propensity, they were not admissible.[3] The trial court properly truncated defense counsel's opening statement. Defendant is not entitled to relief.

*Motion for Mistrial*

Defendant argues that the trial court abused its discretion in denying his motion for a mistrial after the State violated the trial court's order to omit the word "drug" when it referenced the prior felony that supported Defendant's unlawful possession of a firearm charge during its presentation of the indictment to the jury. The State responds that the trial court did not abuse its discretion in denying the motion. We agree with the State.

Before the State published the indictment to the jury, the trial court ordered the State to refer to Defendant's prior drug felony that supported the unlawful possession of a firearm charge as a "felony offense," rather than a "felony drug offense." The State violated this order during its presentation of the indictment and called the prior felony a "felony drug offense." Defense counsel moved for a mistrial. After opening statements, the court heard argument on the motion for a mistrial. The trial court noted that the State's mention of the word "drug" was wrongful. However, it did not find the existence of manifest necessity because the reference was "so fleeting, and [it] told the jury several times that the [i]ndictment [was] just allegations and it [was] not proof of anything." The trial court offered to give a curative jury instruction, but defense counsel opted to forgo the instruction.

Our supreme court summarized the law regarding appellate review of a trial court's denial of a motion for a mistrial by stating the following:

> "The law is well-settled that the decision of whether or not to enter a mistrial rests within the sound discretion of the trial court. This Court will not interfere with the trial court's decision absent a clear abuse of discretion on the record." [*State v. Reid*, 91 S.W.3d 247, 279 (Tenn. 2002)]. "Normally, a mistrial should be declared only if there is a manifest necessity for such action." *State v. Saylor*, 117 S.W.3d 239, 250 (Tenn. 2003). "In other words, a mistrial is an appropriate remedy when a trial cannot continue, or a miscarriage of justice would result if it did." *State v. Land*, 34 S.W.3d 516, 527 (Tenn. Crim. App. 2000). "The purpose for declaring a mistrial is to correct damage done to the judicial process when

---

[3] As conceded by appellate counsel at oral argument, substantial evidence of other crimes, wrongs or acts attributed to the victim(s) was ultimately heard by the jury.

some event has occurred which precludes an impartial verdict." *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). The party seeking a mistrial has the burden of establishing its necessity. *State v. Banks*, 271 S.W.3d 90, 137 (Tenn. 2008).

*State v. Bell*, 512 S.W.3d 167, 187 (Tenn. 2015). In determining whether a trial court should have granted a mistrial due to manifest necessity, "no abstract formula should be mechanically applied and all circumstances should be taken into account." *State v. Mounce*, 859 S.W.2d 319, 322 (Tenn. 1993) (citing *Jones v. State*, 403 S.W.2d 750, 753 (1966)).

In light of the overwhelming proof of Defendant's guilt in this case, the trial court did not abuse its discretion in denying Defendant's motion for a mistrial. Defendant is not entitled to relief.

### *Motion for Judgment of Acquittal*

Defendant argues that the trial court abused its discretion in denying his motion for a judgment of acquittal. The State responds that the trial court acted within its discretion. We conclude that Defendant has waived this issue for failure to cite to any authority supporting his claim.

Tennessee Rule of Appellate Procedure 27(a)(7) requires briefs to this Court to contain an argument "setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on." Tenn. R. App. P. 27(a)(7). Defendant appears to be challenging the trial court's determination that the State offered adequate proof of premeditation to support his first degree murder charge. However, Defendant makes nominal reference to the record and cites no authority to support his claim. "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived." Tenn. Ct. Crim. App. R. 10(b). The issue is waived for appellate review.

### *Conclusion*

Based on the foregoing, the judgments of the trial court are affirmed.

_____
TIMOTHY L. EASTER, JUDGE