# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned On Briefs March 29, 2011

## STATE OF TENNESSEE v. JASON OSMOND HINES

**Appeal from the Criminal Court for Hamilton County**
**No. 266065   Don Poole, Judge**

---

**No.  E2010-01021-CCA-R3-CD - Filed November 30, 2011**

---

Appellant was convicted following a jury trial of two counts of second degree murder and one count of aggravated assault.  At a separate sentencing hearing, the trial court sentenced Appellant to twenty-two years as Range I, violent offender, for each second degree murder conviction and to five years for the aggravated assault conviction.  The trial court merged one of the second degree murder convictions and the aggravated assault conviction into the remaining second degree murder conviction.  On appeal, Appellant argues that (1) the evidence was insufficient to support his conviction for second degree murder; (2) the trial court erred in excluding a drawing from evidence; (3) the trial court erred in denying Appellant's request for a mistrial; (4) the State committed prosecutorial misconduct by suborning perjury of one of its witnesses; (5) the State committed prosecutorial misconduct by making inappropriate comments during closing argument; (6) the cumulative effects of errors at trial precluded a fair trial; and (7) the trial court erred in sentencing Appellant.  We have reviewed the record on appeal and conclude that Appellant cannot be successful on any of the above issues.  Therefore, we affirm the judgments of the trial court.

## Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and THOMAS T. WOODALL, JJ., joined.

Donna Miller, Chattanooga, Tennessee, for the appellant, Jason Osmond Hines.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark Thornton, Assistant Attorney General; William H. Cox, III, District Attorney General, Cameron Williams and Lance Pope, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### *Factual Background*

On the evening of September 9, 2007, Mr. Lovell Lightner was at his mother's house at 3308 3rd Avenue, Chattanooga. He saw Appellant ride up the street on a bicycle. Because Mr. Lightner knew Appellant he began talking to him. According to Mr. Lightner, Appellant told him that Appellant had come to the area to rob a white person. Appellant lifted up his shirt and showed Mr. Lightner, "something like a big old automatic, like a .44, 9mm, or .45."

Mr. Lightner saw Keosha Byrd and Terrell Harris, the victim, drive down the street. Mr. Harris stopped the car and spoke with Appellant. The victim asked Appellant whether he had the forty dollars that he owed him. Appellant responded that he had the money. The victim drove up the street and turned around. He parked in front of Ms. Byrd's uncle's house. Appellant parked his bicycle in Mr. Lightner's mother's driveway and got into the back seat of the victim's car.

Mr. Lightner began to walk towards his mother's house. He heard a gunshot and turned around. He saw Ms. Byrd jump out of the car and run up to the door of 3303 3rd Avenue. He could see the victim and Appellant struggling inside the car. He heard a second shot. He saw Appellant jump out of the car and run away.

Mr. Lightner ran to his mother's house yelling for her to call 911. At the same time, Ms. Byrd ran to 3303 3rd Avenue beating the door to get into the house. He saw the victim get out of the car and stagger around walking like a "zombie." He saw the victim go to Ms. Watkins's house, at 3303 3rd Avenue, and knock on the door. When he was not let into the house, the victim went back to the sidewalk and sat down and did not get up again.

Marquita Watkins lives at 3303 3rd Avenue. She stated at trial that she saw Appellant and Mr. Lightner talking. She was on her porch and heard Appellant tell Mr. Lightner that he was in the area to rob someone. Shortly thereafter, she saw Ms. Byrd and the victim drive up in their car. She saw Appellant speaking to the victim while the victim was in the car. She saw the victim drive up the street, turn around, and come back and park on her side of the street. Ms. Watkins saw Appellant get into the back seat of the victim's car. She saw a "flash of light inside the car" and heard a gunshot. Ms. Watkins saw Ms. Byrd get out of the car and run up to her house. She let Ms. Byrd into the house, and they called 911.

She looked back out the window and saw Appellant still in the car bending over to the front seat of the car by the victim. Ms. Watkins saw Appellant jump out of the car, carrying something in his hand, and run away from the scene. After Appellant ran away, the victim

got out of the car and came up to Ms. Watkins's porch. She did not let him into the house. The victim walked back to his car and sat down. However, the victim could not talk because when he tried "a big bubble of blood would come out of his mouth and bust all over his face."

Ms. Byrd stated that the victim had been her boyfriend. On the date in question, Ms. Byrd and the victim were driving on 3rd Avenue when they saw Appellant. According to Ms. Byrd, Appellant flagged them down and told the victim he wanted to buy some crack cocaine. The victim told him that they would be "back around" because they had to drop a friend off at a house up the street.

Ms. Byrd testified that the victim had been selling cocaine that day and that he had over $1,000 in his possession. They returned to Appellant and parked in front of Ms. Watkins's house. Appellant got in the backseat behind the victim. The victim said something that made Ms. Byrd turn around and look at him. When she did that, she saw Appellant pulling a gun from his waistband. Appellant was pointing the gun toward the victim's face or neck. When Ms. Byrd saw the victim trying to get out of the car, she got out and ran to Ms. Watkins's house.

Ms. Byrd saw the victim get out of the car. She said he came to her friend's house. When he returned to the car, he fell on the ground. Ms. Watkins and her boyfriend went to check on the victim by the car. Ms. Byrd said she did not see anyone take anything from the car. She also denied that the victim had a gun the night of the incident. Ms. Byrd gave a statement to officers when they arrived, and she identified Appellant in a photographic lineup immediately when she was shown the photographs.

Officer Peter Miller was a patrol officer with the Chattanooga Police Department. He responded to a shooting call at the 3300 block of 3rd Avenue. When he arrived, he found the victim lying on the ground. The victim had a single gunshot wound. He was still alive but unable to speak.

Lieutenant Edwin McPherson worked for the Chattanooga Police Department. He headed up the search for Appellant. On September 11, 2007, Lieutenant McPherson received information as to where Appellant was hiding. The officers went to the location, found Appellant, and arrested him.

Investigator Greg Mardis, with the Chattanooga Police Department, collected evidence at the scene of the crime. He found $300 worth of cocaine between the console and seat of the car. He could not find the weapon and found no shell casings in the car. He

testified that this could have been because a revolver was used rather than an automatic weapon.

Scientists with the Tennessee Bureau of Investigation ("TBI") also testified at the trial. Don Carmen testified that the bullet he received for testing was a bullet from a .44 special Smith and Wesson. It was a revolver bullet. Laura Hodge testified that the gunshot residue kit collected from the victim indicated no gunshot residue. She stated that this result did not eliminate the possibility that the victim had gun.

An autopsy was performed on the victim. James K. Metcalfe was the forensic pathologist with the Hamilton County medical examiner's office who performed the autopsy. He determined that a gunshot wound to the neck was the cause of death. Dr. Metcalfe testified that the bullet entered the victim's neck near his right ear, exited on the left side of his neck, and came to rest in his shoulder. There were also markings that suggested close-range contact.

Appellant also testified at the trial. He stated that he arrived on 3rd Avenue and found Mr. Lightner. He spoke with Mr. Lightner about buying some crack cocaine. He saw the victim, whom he knew from serving time in jail together. The victim said that he would sell him some cocaine but needed to take a friend home who was in the backseat of the car. When the victim returned, Appellant tried to give the victim $40, but the victim told Appellant he needed to get into the car.

Appellant got into the backseat of the car. He placed his $40 on the console. According to Appellant, the victim grabbed the money and started arguing with him about Appellant's owing him money from a prior drug deal. Appellant told the victim he needed to give him his money back or give him some cocaine. According to Appellant, the victim pointed a gun at him and demanded the rest of the money Appellant owed him. Appellant testified that they began to argue and struggle with each other to gain control of the gun. Appellant thinks that during the struggle his finger hit the trigger and caused the victim to accidentally shoot himself. He stated that he got scared when the victim was shot and ran away. Lieutenant McPherson arrested Appellant at his friend's house.

The Hamilton County Grand Jury indicted Appellant for one count of first degree murder, one count of first degree felony murder, and one count of attempted especially aggravated robbery. At the conclusion of a jury trial held May 5-7, 2009, the jury convicted Appellant of two counts of second degree murder as lesser included offenses of the first degree murder charges and of aggravated assault as a lesser included offense of attempted especially aggravated robbery.

On June 8, 2009, the trial court held a separate sentencing hearing. The trial court sentenced Appellant to twenty-two years as a Range I, violent offender for each of the second degree murder convictions and five years for the aggravated assault conviction. The trial court then merged one of the second degree murder counts and the aggravated assault into the remaining second degree murder conviction. The result was one twenty-two year sentence.

## ANALYSIS

### Sufficiency

Appellant argues that the evidence was insufficient to support his conviction. The State disagrees.

To begin our analysis, we note that when a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S .W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

In his argument, Appellant argues that the evidence was not sufficient to support his conviction for second degree murder because he was acting in self-defense and the gun

accidentally discharged, killing the victim. Appellant's argument to support this proposition consists of the following:

> This Court should rely on the testimony of [Appellant] because Lightner's testimony is clearly inaccurate based on its inconsistencies with the other State proof. Specifically, Lightner described seeing an automatic weapon in [Appellant's] possession which was obviously not the murder weapon based on the testimony from the State's expert and Lightner claimed to have heard two (2) shots when the evidence was clear that only one (1) shot was fired. In addition, Lightner also admitted to lapses in memory due to his marijuana use and completely contradictory statements to the police at the time of the incident and his testimony at trial. [Appellant] was acting in self defense having entered the car with money for the purpose of buying drugs and also having given the money to the victim. [Appellant's] account fully matches up with the physical evidence.

Essentially, Appellant is asking us to reassess Mr. Lightner's credibility and put more weight on Appellant's testimony than the other witnesses' testimony. As stated above, this Court is not permitted to reweigh the evidence or determine various witnesses' credibility. *See Morgan*, 929 S.W.2d at 383; *Matthews*, 805 S.W.2d at 779; *Pruett*, 788 S.W.2d at 561. Moreover, it was the jury's perogative to reject Appellant's so called self-defense claim and convict him of murder. *State v. Goode*, 956 S. W.2d 521, 527 (Tenn. Crim. App. 1997).

We are precluded from finding the evidence insufficient based upon these grounds, and Appellant has put forth no other argument as to why the evidence was insufficient. Therefore, this issue is without merit.

## Introduction of Drawing

At trial, Appellant attempted to introduce a drawing completed by one of Appellant's fellow inmates depicting the incident to demonstrate where Appellant's hands and the victim's hands were in relation to each other. The trial court initially was going to allow the introduction of the drawing but subsequently discovered that Appellant had not drawn the picture himself. At this point, the trial court sustained the State's objection to the introduction of the drawing. Appellant argues that the trial court erred in ruling that Appellant could not introduce the drawing. The State argues that it was not error to exclude the drawing, and if it was error, it was harmless error and did not affect the outcome of the trial.

As we begin our analysis, we note well-established precedent providing generally "that trial courts have broad discretion in determining the admissibility of evidence, and their rulings will not be reversed absent an abuse of that discretion." *State v. McLeod*, 937 S.W.2d 867, 871 (Tenn. 1996). To be admissible, evidence must satisfy the threshold determination of relevancy mandated by Rule 401 of the Tennessee Rules of Evidence. *See, e.g., State v. Banks*, 564 S.W.2d 947, 949 (Tenn. 1978). Rule 401 defines "relevant evidence" as being "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, relevant "evidence may be excluded if its probative value is substantially outweighed by . . . the danger of unfair prejudice." Tenn. R. Evid. 403; *see also Banks*, 564 S.W.2d at 951. A trial court abuses its discretion in regards to the admissibility of evidence only when it "applie[s] an incorrect legal standard, or reach[es] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999) (quoting *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997)).

We conclude that there was not an abuse of discretion with respect to this issue. A drawing depicting where the hands of both Appellant and the victim were during the alleged altercation is of limited relevance. Appellant was allowed to testify extensively on this same issue. Therefore, evidence concerning his theory of where their hands were in relation to each other was presented to the jury. We conclude that the trial court did not apply an incorrect legal standard and that its decision was not against logic and did not cause an injustice to Appellant. *See Shirley*, 6 S.W.3d at 247.

Because we conclude that there was no abuse of discretion, in denying the admission of the drawing into evidence Appellant is not entitled to relief with respect to this issue..

## Request for Mistrial

Appellant argues that the trial court erred in failing to declare a mistrial when there was a loud, emotional outburst in the courtroom and outside the courtroom during closing argument. The State disagrees.

The purpose of a mistrial is to correct the damage done to the judicial process when some event has occurred which would preclude an impartial verdict. *See Arnold v. State*, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977). The decision whether to grant a mistrial is within the trial court's discretion and will not be disturbed absent an abuse of that discretion. *State v. Millbrooks*, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991) (citing *State v. Hall*, 667 S.W.2d 507, 510 (Tenn. Crim. App. 1983)). For this reason, an appellate court's review should provide considerable deference to the trial court's ruling in determining whether an

occurrence or event at trial has so prejudiced the defendant or the State as to preclude a fair and impartial verdict. *See State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996).

In determining whether there is a "manifest necessity" for a mistrial, "'no abstract formula should be mechanically applied and all circumstances should be taken into account.'" *State v. Mounce*, 859 S.W.2d 319, 322 (Tenn. 1993) (quoting *Jones v. State*, 403 S.W.2d 750, 753 (Tenn. 1966)). Only when there is "no feasible alternative to halting the proceedings" can a manifest necessity be shown. *State v. Knight*, 616 S.W.2d 593, 596 (Tenn. 1981).

Although Tennessee courts do not apply any exacting standard for determining when a mistrial is necessary after a witness has injected improper testimony, this Court has considered: (1) whether improper testimony resulted from questioning by the State, rather than having been a gratuitous declaration; (2) the relative strength or weakness of the State's proof; and (3) whether the trial court promptly gave a curative instruction.[1] *See State v. Demetrius Holmes*, No. E2000-02263-CCA-R3-CD, 2001 WL 1538517, at * l-4 (Tenn. Crim. App., at Knoxville, Nov. 30, 2001); *State v. William Dotson*, No. 03C01-9803-CC-00105, 1999 WL 357327, at *4 (Tenn. Crim. App., at Knoxville, June 4, 1999). This analytical framework is helpful in the case at bar.

Appellant states in his brief that the victim's mother was the source of the outburst. However, the record does not reflect this fact. As stated above, the outburst occurred during closing argument. The trial court immediately informed the jury that it "would give [them] instructions later on that certainly sympathy and bias cannot enter into [their] deliberations." The trial court included instructions to that effect in the jury instructions. After the jury retired, the trial court made a ruling on Appellant's request for a mistrial. The trial court stated that it assumed that the outburst was from a family member but did not specify whether it was the victim's mother. The trial court made a determination that a mistrial was not manifestly necessary.

In the case at hand, the outburst was not from a witness during his or her testimony. Instead, it was from a person in the courtroom during closing argument. The State's case was relatively strong because the fact that Appellant shot the victim was not at issue, but rather the facts surrounding the shooting were. Also, the trial court promptly gave a curative instruction. Under the circumstances, we agree with the trial court. We find no abuse of discretion by the trial court.

---

[1] These factors are non-exclusive and may not be pertinent in every case. *William Dotson*, 1999 WL 357327, at *4; *see Mounce*, 859 S.W.2d at 322 (holding that determination of propriety of mistrial is not subject to mechanistic determination and should be made on the facts of each individual case).

Therefore, this issue is without merit.

## Prosecutorial Misconduct-Perjured Testimony

Appellant argues that the State committed prosecutorial misconduct by presenting witness Lovell Lightner whose testimony the State knew was perjured. Appellant points out that Mr. Lightner's testimony was inconsistent and often directly contradictory to other witnesses' testimony. The State argues that the fact that the witness's testimony differs from other evidence presented does not necessarily lead to the conclusion that the State was suborning perjury.

Appellant focuses on the facts that Mr. Lightner testified that Appellant was in possession of an automatic pistol when he shot the victim, that the medical examiner testified that the victim was killed by a bullet from a revolver, and, that no shell casing was ejected into the vehicle. He also points out that Mr. Lightner testified he heard two gunshots, but all the other witnesses testified that there was one gunshot. These assertions are the entirety of Appellant's argument that the State suborned perjury.

We agree that the State has a duty not to present false testimony. *See State v. Spurlock*, 874 S.W.2d 602, 621 (Tenn. Crim. App. 1993). In addition, if the State realizes that false testimony has occurred, the State has a duty to correct such false testimony. *Id.* However, the fact that Mr. Lightner's testimony differed from that of other witnesses and other evidence presented is not in and of itself proof that Mr. Lightner perjured himself. Mr. Lightner testified that he has smoked a great deal of marijuana since the events at issue and that his memory was "foggy." In addition, Appellant was allowed to cross-examine Mr. Lightner at length. When witnesses give contradictory testimony, it is up to the trier of fact to determine which testimony is credible. Appellant has not proven that Mr. Lightner perjured himself or if he did perjure himself that the prosecution knowingly put him on the stand to perjure himself.

Therefore, this issue is without merit.

## Prosecutorial Misconduct-Closing Argument

Appellant argues that the State committed prosecutorial misconduct in its closing argument when the assistant district attorney told the jury that they could not consider self-defense. Appellant asserts that this was an improper statement and was misleading to the jury. The State argues that the statements of which Appellant complains were not improper and, therefore, did not constitute prosecutorial misconduct.

In general, the scope of closing argument is subject to the trial court's discretion. Counsel for both the prosecution and the defense should be permitted wide latitude in arguing their cases to the jury. *State v. Cauthern*, 967 S.W.2d 726, 737 (Tenn. 1998). However, argument must be temperate, "predicated on evidence introduced during the trial," and relevant to the issues being tried. *State v. Keen*, 926 S.W.2d 727, 736 (Tenn. 1994). Thus, the State must not engage in argument designed to inflame the jurors and should restrict its comments to matters properly in evidence at trial. *State v. Hall*, 976 S.W.2d 121, 158 (Tenn. 1998).

When a reviewing court finds improper argument, *State v. Philpott*, 882 S.W.2d 394 (Tenn. Crim. App. 1994), sets out five factors to determine whether a prosecutor's improper conduct could have affected the verdict to the "prejudice of the defendant." *Id.* at 408. The factors are: (1) the conduct complained of in light of the facts and circumstances of the case; (2) the curative measures undertaken; (3) the intent of the prosecutor in making the improper remarks; (4) the cumulative effect of the improper conduct and any other errors in the record; and, (5) the relative strength or weakness of the case. *Id.* (citing *Judge v. State*, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976)); *see also State v. Goltz*, 111 S.W.3d 1, 5 (Tenn. Crim. App. 2003).

As stated above, Appellant complains that the State improperly told the jury in closing argument that it could not consider self-defense in its deliberations. Before closing argument, the trial court and the attorneys discussed the jury instructions. Appellant's attorney initially requested an instruction on self-defense. The trial court and Appellant's counsel had the following exchange:

THE COURT: Now, it would appear to me and I will hear you out concerning this. Is the defense not saying it was an accident or it was [a] tussle over the gun itself rather than self-defense?

[APPELLANT'S COUNSEL]: Well, Your Honor, I think what we are saying is that in the midst of the tussle the gun went off unintentionally when he grabbed the gun and did that based on self-defense. I mean he was defending himself because the guy was waving it in his face and so he grabbed the gun and pulled it and it went off.

The State responded that self-defense requires an assault and the creation of reasonable fear in the defendant and that those facts were not in the proof. The State argued, "The jury has heard that there was a struggle over this weapon according to the defendant. And that during

that struggle he grabbed his hand and the gun went off, that it somehow struck the gun[.]" The trial court recessed. When the parties returned, the trial court asked Appellant's counsel if he wanted the self-defense charge. Appellant's counsel stated that they did not want the self-defense instruction. The trial court responded in the following manner, "I will leave out the self-defense charge. I quite, frankly, had indicated earlier I questioned somewhat, it seems like to me that the defense really is that there was a struggle, an accident, and the gun went off. I left it up to you to make that decision."

Clearly, Appellant declined to have the jury instructed on self-defense and, subsequently, did not object when the State made reference to the fact that the jury was not going to be given the self-defense instruction.

The State said the following at closing argument:

> First is this idea of self-defense. You heard [Appellant's attorney] say in his opening statement, this is an issue of self-defense. You heard the testimony of [Appellant] that this is self-defense issue. You are going to receive some instructions from the Judge. You are not going to receive an instruction about self-defense. It is not something the law allows you to consider in this case. It has not been fairly raised by the proof. You will not receive that instruction. When you get the instructions, look over them, see if self-defense is in there. It will not be.

Appellant failed to object to these statements during closing argument. Typically when a prosecutor's statement is not the subject of a contemporaneous objection, the issue is waived. Tenn. R. Crim. P. 33 and 36(a); *see also State v. Thornton*, 10 S.W.3d 229, 234 (Tenn. Crim. App. 1999); *State v. Green*, 947 S.W.2d 186, 188 (Tenn. Crim. App. 1997); *State v. Little*, 854 S.W.2d 643, 651 (Tenn. Crim. App. 1992).

Because Appellant did not object to the statements at trial, if this Court is to review the claims of prosecutorial misconduct we must do so through the process of "plain error" review embodied in Rule 36(b) of the Tennessee Rules of Appellate Procedure which provides, "When necessary to do substantial justice, an appellate court may consider an error

that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal."[2]

This Court has, in its discretion, from time to time reviewed allegations of prosecutorial misconduct as "plain error" even in the absence of a contemporaneous objection. *See, e.g., State v. Marshall*, 870 S.W.2d 532 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Carter*, 988 S.W.2d 145 (Tenn. 1999) (determining in absence of objection that prosecutor's jury argument was not plain error); *State v. Butler*, 795 S.W.2d 680 (Tenn. Crim. App. 1990) (considering whether statements of prosecutor were plain error despite lack of objection by defendant); *Anglin v. State*, 553 S.W.2d 616 (Tenn. Crim. App. 1977) (determining that in order to justify reversal on the basis of improper argument and remarks of counsel in absence of objection, it must affirmatively appear that the improper conduct affected the verdict to the prejudice of the defendant). However, appellate courts are advised to use it sparingly in recognizing errors that have not been raised by the parties or have been waived due to a procedural default. *State v. Bledsoe*, 226 S.W.3d 349, 354 (Tenn. 2007).

In exercising our discretion as to whether plain error review under Rule 36(b) of the Tennessee Rules of Appellate Procedure is appropriate, the Tennessee Supreme Court has directed that we examine five factors: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the defendant must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. *See State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000) (citing *State v. Adkisson*, 899 S.W.2d 626, 641 (Tenn. Crim. App. 1994)). All five (5) factors must be present for plain error review. *Smith*, 24 S.W.3d at 283.

For a "substantial right" of the accused to have been affected, the error must have prejudiced the appellant. In other words, it must have affected the outcome of the trial court proceedings. *United States v. Olano*, 507 U.S. 725, 732-37, 113 S. Ct. 1770 (1993) (analyzing Rule 52(b) of the Federal Rule of Criminal Procedure); *Adkisson*, 899 S.W.2d at 642. This is the same type of inquiry as the harmless error analysis under Rule 36(b) of the

---

[2] This rule by its terms allows plain error review only where there is a failure to allege error in the new trial motion or where the error is not raised before the appellate court. Nevertheless, the rule has been interpreted by the appellate courts to allow appellate review under some circumstances in the absence of a contemporaneous objection as well. This language was formerly contained in Rule 52(b) of the Tennessee Rules of Criminal Procedure.

Tennessee Rules of Appellate Procedure, but the appellant bears the burden of persuasion with respect to plain error claims. *See Olano*, 507 U.S. at 732-37.

In *State v. Bledsoe*, 226 S.W.3d 349 (Tenn. 2007), our supreme court recently revisited the question as to when an issue should be considered under the plain error doctrine. 226 S.W.3d at 353-55. In its analysis, the supreme court stressed that appellate courts should use plain error sparingly. *Id.* at 354. The court then stated the following:

> [A]n error "may be so plain as to be reviewable . . . , yet the error may be harmless and therefore not justify a reversal." *United States v. Lopez*, 575 F.2d 681, 685 (9th Cir. 1978); *see Adkisson*, 899 S.W.2d at 642. The magnitude of the error must have been so significant "'that it probably changed the outcome of the trial.'" *Adkisson*, 899 S.W.2d at 642 (quoting *United States v. Kerley*, 838 F.2d 932, 937 (7th Cir. 1988)); *see also United States v. Douglas*, 818 F.2d 1317, 1320 (7th Cir. 1987).
>
> It is the accused's burden to persuade an appellate court that the trial court committed plain error. *See Olano*, 507 U.S. at 734, 113 S. Ct. at 1770. Further, our complete consideration of all five of the factors is not necessary when it is clear from the record that at least one of them cannot be satisfied. *Smith*, 24 S.W.3d at 283.

*Id.* at 354-55.

As stated above, before closing argument, Appellant's counsel told the trial court that he did not want an instruction on self defense. It appears from the record that this decision was made because he was basing his defense on a theory that the shooting was an accident. We conclude, when Appellant failed to object to the comments made during closing argument about the lack of a self defense instruction, that Appellant was making a tactical decision to rely on his theory of accident. Therefore, he is unable to meet one of the five factors, that he did not waive the issue for tactical reasons. *See Smith*, 24, S.W.3d at 282-83. Therefore, Appellant cannot demonstrate that plain error review is appropriate for this issue.

### Cumulative Errors

Appellant also argues that the cumulative effect of the errors by the trial court and prosecutorial misconduct of the State deprived him of a fair trial. We disagree. Appellant's argument is essentially a recapitulation of the arguments he has presented on appeal. As

stated above, we have determined that Appellant's above arguments are without merit and, therefore, there were not sufficient errors during at the trial level to deprive Appellant of a fair trial.

## Sentencing

On appeal, Appellant argues that the trial court erred in sentencing Appellant because the trial court did not give him credit for any mitigating factors and improperly enhanced Appellant's sentence. The State disagrees.

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of the issues. The review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40–35–401(d). "[T]he presumption of correctness 'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *State v. Carter*, 254 S.W.3d 335, 344–45 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). "If . . . the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails." *Id.* at 345 (citing *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992)). We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *Ashby*, 823 S.W.2d at 169.

In making its sentencing determination, a trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses; (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995). When imposing the sentence within the appropriate sentencing range for the defendant:

[T]he court shall consider, but is not bound by, the following advisory sentencing guidelines:

-14-

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c) (2006).

At the outset we note that Appellant committed the criminal offenses at issue in September 2007; therefore, the 2005 amendments to the sentencing act apply to our review of his sentencing. The 2005 amendments to the sentencing act made the application of the enhancement factors advisory in nature. *See* T.C.A. § 40-35-114; *State v. Jackie Lynn Gray*, No. M2007-02360-CCA-R3-CD, 2008 WL 2579175, at *5 (Tenn. Crim. App., at Nashville, June 28, 2008), *perm. app. denied*, (Tenn. Dec. 29, 2008); *State v. Troy Sollis*, No. W2007-00688-CCA-R3-CD, 2008 WL 1931688, at *3 (Tenn. Crim. App., at Jackson, May, 2, 2008). In fact, "[t]he 2005 amendments [to the sentencing act] deleted as grounds for appeal a claim that the trial court did not weigh properly the enhancement and mitigating factors." *State v. Carter*, 254 S.W.3d 335, 344 (Tenn. 2008).

After a review of the transcript from the sentencing hearing, it is clear that the trial court considered the nature and characteristics of the criminal conduct involved, Appellant's history and background, the mitigating and enhancement factors, and the principles of sentencing. *See id.* at 345-46. Therefore, there is a presumption that the trial court's determination is correct. The trial court applied one mitigating factor, that Appellant's background was not good, under Tennessee Code Annotated section 40-35-113(13). The trial court stated that Appellant had argued that he had acted under strong provocation, and the trial court specifically discounted that argument. The trial court also applied three enhancement factors: that Appellant had "a previous history of criminal convictions," that Appellant "failed to comply with the conditions of a sentence involving release into the community," and Appellant "possessed or employed a firearm . . . during the commission of the offense." T.C.A. § 40-35-114(1), (8), (9). With regard to Appellant's previous history of criminal convictions, the trial court stated that Appellant's previous history was great even though there were no felony convictions. Appellant was convicted of second degree murder, a Class A felony. The trial court determined that Appellant was a Range I, standard offender and was subject to a sentencing range of fifteen to twenty-five years. After application of mitigating and enhancement factors, the trial court sentenced Appellant to twenty-two years.

Appellant argues that the trial court should have applied additional mitigating factors when sentencing him. Appellant states that the trial court should have also used the following assertions as mitigating factors: "[Appellant] had no prior felony record, most of his misdemeanor convictions were for driving on a revoked license, that the proof against [Appellant] was extremely contraverted [sic], that [Appellant] was acting under extreme duress, and that [Appellant] was at all times extremely remorseful for his part in the victim's death." As stated above, the trial court specifically dismissed the idea that Appellant was under duress or strong provocation as a mitigating factor. With regard to the lack of felony convictions, the trial court stated that Appellant's convictions were misdemeanors when the court was applying that enhancement factor.

Appellant argues that all the issues that he asserts should be considered mitigating factors under Tennessee Code Annotated section 40-35-113(13). The mitigating factor based upon Appellant's background was the same factor. Appellant has not made an argument that other mitigating factors found at Tennessee Code Annotated section 40-35-113 should be applied. Therefore, in essence, Appellant is arguing that factor (13) should be given more weight by the trial court. Appellant also makes a blanket assertion with no accompanying argument that the trial court "improperly enhanced" Appellant's sentence. This argument seems to be based on an assertion that the trial court improperly weighed the mitigating and enhancement factors. However, as stated above, the weight given to mitigating and enhancement factors is not a basis upon which a defendant may appeal to this Court. *See* T.C.A. § 40-35-401(b).

Therefore, this issue is without merit.

## CONCLUSION

For the foregoing reasons, we affirm the judgments of the trial court.

_____
JERRY L. SMITH, JUDGE

-16-